1
2
3
4

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

5
6
7
8

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

9
10
11
12

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*Pro Hac Vice* to be Submitted)
*spencer@spencersheehan.com*
505 Northern Boulevard, Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552

13

*Counsel for Plaintiff Steve Nuñez
and the Proposed Class*

14
15
16
17

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

18
19
20
21
22
23
24

| | |
|---|---|
| STEVE NUNEZ, *individually and on behalf of all others similarly situated*, | Case No. 2:20-cv-03846 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Demand for Jury Trial** |
| UNILEVER UNITED STATES, INC., | |
| Defendant. | |

25
26
27
28

Plaintiff Steve Nuñez ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Unilever United States, Inc. ("Defendant" or "Unilever"), pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

## INTRODUCTION

1. Breyers Natural Vanilla Ice Cream is an ice cream manufactured, sold, and marketed by Unilever.

2. During the period from April 27, 2016, to the present, Plaintiff purchased Breyers Natural Vanilla Ice Cream in California.

3. Unilever falsely and misleadingly markets Breyers Natural Vanilla Ice Cream to consumers as containing only vanilla flavor from vanilla (i.e., the vanilla plant) and not from non-vanilla sources. Unfortunately for consumers, this is untrue, as much of the vanilla flavor comes from non-vanilla plant sources.

4. In fact, Breyers Natural Vanilla Ice Cream has, at most, only a trace of real vanilla, and what consumers taste is vanilla flavor provided by non-vanilla sources.

5. Rather than only containing real vanilla, Breyers Natural Vanilla Ice Cream contains non-vanilla flavors and vanilla enhancers which are not disclosed, contrary to the legal requirements and expectations of reasonable consumers.

6. Unilever charges a price premium for Breyers Natural Vanilla Ice Cream.

7. Plaintiff would not have purchased or paid more for Breyers Natural Vanilla Ice Cream had Plaintiff realized that much, if not all, of the vanilla flavor came from non-vanilla plant sources.

8. Plaintiff would not have purchased or paid more for Breyers Natural Vanilla Ice Cream had Plaintiff known that it does not exclusively contain flavor derived from vanilla beans.

1

9.     On behalf of himself and the proposed class members, Plaintiff seeks damages and an injunction to stop Unilever's false and misleading marketing practices with regard to Breyers Natural Vanilla Ice Cream.

### JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the parties are citizens of different states.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

### PARTIES

12.     Plaintiff Steve Nuñez is a resident of the City and County of Los Angeles, California.

13.     During the period from April 27, 2016, to the present, in California, Plaintiff purchased Breyers Natural Vanilla Ice Cream for personal, family, or household use.

14.     The front of the cartons of Breyers Natural Vanilla Ice Cream that Plaintiff purchased said "Natural Vanilla" in large, light green letters against a black background, and the front of the cartons contained pictures of two vanilla beans and vanilla flowers and a scoop of the ice cream with noticeable specks purporting to be actual vanilla beans. Plaintiff relied upon these representations when Plaintiff purchased Breyers Natural Vanilla Ice Cream. Plaintiff believed that the vanilla flavor in the Breyers Natural Vanilla Ice Cream would come only from the vanilla plant. Plaintiff would not have purchased Breyers Natural Vanilla Ice

Cream had Plaintiff understood the true flavor composition of the product.

15.     Plaintiff would purchase Breyers Natural Vanilla Ice Cream again in the future if the product were remedied to reflect Defendant's labeling and marketing claims for it.

16.     Defendant Unilever United States, Inc., is incorporated in Delaware, with its principal place of business in Englewood Cliffs, New Jersey.

17.     Unilever is one of the world's largest food and consumer packaged goods companies, and it produces and markets ice cream products in the United States and throughout the world. Unilever sells ice cream under the "Breyers" brand name throughout California.

## FACTUAL ALLEGATIONS

18.     As "natural, organic and better-for-you trends proliferate, demand has flourished for naturally sourced vanilla."[1]

19.     Manufacturers have responded "by transitioning from artificial to natural ingredients," including "natural vanilla ingredients."[2]

20.     However, global climate disruptions resulting in natural disasters befalling the primary vanilla producing country of Madagascar, have caused global vanilla shortages.

21.     This disruption in available vanilla has caused companies to cut corners when it comes to their premium vanilla ice cream products.

22.     According to John B. Hallagan and Joanna Drake, the former and current legal advisors for The Flavor and Extract Manufacturers Association of the United States ("FEMA"):

When consumers purchase ice cream labeled as "vanilla ice cream" they expect it to be flavored with vanilla flavoring derived from vanilla beans *unless labeled otherwise*. As we shall see, this expectation is codified in

[1] Amanda Del Buono, *Suppliers utilize cost-effective vanilla ingredient solutions*, Beverage Industry (last updated Oct. 14, 2016).
[2] *Id.*

two U.S. federal standards of identity, one for vanilla flavorings and one for ice cream.[3] (emphasis added).

23.    21 C.F.R. § 135.110(f)(2)(i), referred to as "Category 1," states:

If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the words "ice cream".

24.    That the ice cream regulations are meant to be read "together with the vanilla standard of identity means that the characterizing flavor for this [Category 1] ice cream must be provided only by vanilla extract complying with the standard at 21 CFR Section 169.175, or another standardized vanilla flavoring derived solely from vanilla beans."[4]

25.    The International Dairy Foods Association summarized the unique distinction between natural and artificial flavors in the context of ice cream as follows:

Flavors which are derived from natural sources other than the characterizing flavor and simulate, resemble or reinforce the characterizing flavor, are considered artificial flavors. Products flavored in such a manner must be labeled according to either flavor labeling requirements of Category II or III products.[5]

26.    Though the text of 21 C.F.R. § 135.110(f)(2)(i) does not distinguish between flavor from the natural characterizing flavor and natural flavors from sources other than the characterizing flavor, the regulations for vanilla and ice cream products "are supplemented by a formal [Food and Drug Administration ('FDA')] Advisory Opinion, and a collection of FDA-issued regulatory

---

[3] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Apr. 25, 2018.
[4] Hallagan, *supra* note 3, at p. 11.
[5] IDFA, Ice Cream & Frozen Desserts Labeling Manual, 2019 Ed.

correspondence."[6]

27.    The 1983 Advisory Opinion cited by Hallagan and Drake states that 21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors," which means the "FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel."[7]

**SPECIFIC MISREPRESENTATIONS,**

**MATERIAL OMISSIONS, AND DECEPTIVE ACTS**

**Misleading and Deceptive Name**

28.    The Breyers Natural Vanilla Ice Cream product name is false, misleading, and unlawful because Breyers Natural Vanilla Ice Cream does not get its flavoring only from vanilla beans, but the product name implies otherwise.

29.    The front label of Breyers Natural Vanilla Ice Cream is represented as complying with 21 C.F.R. § 135.110(f)(2)(i) ("Category 1") because the front label only mentions the "Natural Vanilla" flavoring through the name, "Natural Vanilla," pictures of vanilla beans and vanilla flowers, "Rainforest Alliance Certified Vanilla" seal, and picture of the ice cream containing what appear to be vanilla bean specks, as the image below shows:

---

[6] Hallagan, *supra* note 3, at p. 1.
[7] Hallagan, endnote 7, FDA, 1983. Letter dated 9 February 1983 from FDA to FEMA constituting an FDA Advisory Opinion.

**Breyers Natural Vanilla Ice Cream Front Label**



30.     These representations are misleading and unlawful because Breyers Natural Vanilla Ice Cream contains flavors not derived from the vanilla bean from the vanilla plant.

**BREYERS VANILLA FLAVORING COMES FROM SOURCES OTHER THAN THE VANILLA PLANT**

31.     Laboratory analysis of Breyers Natural Vanilla Ice Cream evidences that most of the vanilla flavor comes from non-vanilla plant sources.

32.     Specifically, in November of 2019, the Center for Advanced Food Technology at Rutgers University conducted laboratory analysis on Breyers Natural Vanilla Ice Cream that determined that most of the vanilla flavoring comes from non-vanilla bean sources.

33.     Distinguishing real vanilla from artificial vanilla is a challenging task

because every time a new high tech authentication method is adopted, "bad actors" find ways to "beat the test," such as artificial vanillin designed to contain isotopes present in real vanilla.

34.     This is why identifying the presence and amount of the following four vanilla marker compounds is valuable:

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

35.     The testing of Defendant's Breyers Natural Vanilla Ice Cream did not detect p-hydroxybenzaldehyde, vanillic acid, or p-hydroxybenzoic acid, which means the Breyers Natural Vanilla Ice Cream has, at most, a small amount of vanilla from vanilla beans, in accordance with the following chart:

**Breyer's Natural Vanilla Ice Cream**
**Production Code: 29230 A 07:58**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3571

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 205 | 99298 | acetic acid | 0.022 |
| 250 | 3625596 | diacetyl | 0.797 |
| 342 | 268657 | acetoin | 0.059 |
| 447 | 440003 | butyric acid | 0.097 |
| 474 | 2288379 | ethyl lactate | 0.503 |
| 510 | 679180 | dimethylsulfoxide (DMSO) | 0.149 |
| 632 | 14688936 | dimethyl sulfone | 3.230 |
| 684 | 5573689 | hexanoic acid | 1.226 |
| 750 | 115042 | benzyl alcohol | 0.025 |
| 769 | 568416 | heptanoic acid | 0.125 |
| 806 | 540814 | guaiacol | 0.119 |
| 813 | 465017 | nonanal | 0.102 |
| 836 | 139435 | maltol | 0.031 |
| 885 | 12067851 | octanoic acid | 2.654 |
| 890 | 77124 | benzoic acid | 0.017 |
| 912 | 315936 | 2-methoxy-4-methylphenol | 0.069 |
| 928 | 4547572 | naphthalene-d8 (internal standard) | 1.000 |
| 971 | 3843797 | nonanoic acid | 0.845 |
| 1007 | 187607 | delta-nonalactone | 0.041 |
| 1030 | 148583 | 2,4-decadienal | 0.033 |
| 1065 | 7005324 | decanoic acid | 1.540 |
| 1121 | 25782638 | vanillin | 5.670 |
| 1140 | 125485 | undecanoic acid | 0.028 |
| 1158 | 376018 | vanillyl ethyl ether | 0.083 |
| 1195 | 335836 | delta-decalactone | 0.074 |
| 1225 | 1486537 | lauric acid | 0.327 |
| 1338 | 81955 | gamma-dodecalactone | 0.018 |
| 1365 | 268239 | delta-dodecalactone | 0.059 |
| 1381 | 405333 | myristic acid | 0.089 |
| | | **Total (excluding internal standard)** | **18.03** |
| 1365 | 268239 | delta-dodecalactone | 0.059 |
| 1381 | 405333 | myristic acid | 0.089 |
| | | **Total (excluding internal standard)** | **18.03** |

37.     Moreover, the fact that Breyers Natural Vanilla Ice Cream has elevated levels of vanillin evidences that the vanillin is from non-vanilla bean sources, which can include ferulic acid or wood pulp (referred to as lignin).

38.     The absence of detectable levels of p-hydroxybenzaldehyde, p-hydroxybenzoic acid, and vanillic acid, coupled with vanillin levels, indicates this vanillin is not real vanilla from the vanilla plant, which deceives consumers.

39.     The Breyers Natural Vanilla Ice Cream also contains maltol, a

8

compound not found in vanilla beans, but which is "used to enhance the flavor and aroma of fruit, vanilla, and chocolate flavored foods and beverages."[8]

40.     That Breyers Natural Vanilla Ice Cream contains non-vanilla flavors can also be concluded by experts in the field of food labeling (but not the reasonable consumer) from the side panel of the Breyers Natural Vanilla Ice Cream packaging, which states as follows:

**Information Panel**



41.     The ingredient list identifies "MILK, CREAM, SUGAR, VEGETABLE GUM (TARA), NATURAL FLAVOR."

42.     The flavor compound analysis indicating flavors not found in vanilla and flavors used to enhance vanilla (i.e., maltol), and the ingredient list not specifying "vanilla extract complying with the standard at 21 CFR Section 169.175, or another standardized vanilla flavoring derived solely from vanilla beans,"

---

[8] Natural Maltol, Elan Chemical Company Inc., UL Prospector, https://www.ulprospector.com/en/na/Food/Detail/10751/327455/Natural-Maltol.

support the conclusion that Breyers Natural Vanilla Ice Cream contains non-vanilla artificial flavors that give the impression of more vanilla.[9]

43.     The Breyers Natural Vanilla Ice Cream cannot be "Category 1" because its side panel concedes it does not contain only vanilla flavor from the vanilla plant.

44.     Assuming the Breyers Natural Vanilla Ice Cream contains a small amount of vanilla, this is its "natural characterizing flavor."

45.     However, the laboratory analysis shows that "the artificial flavor predominates" in the Breyers Natural Vanilla Ice Cream because the vanillin levels appear to be much greater than 1 ounce per unit of vanilla constituent. *See* 21 C.F.R. § 135.110(f)(2)(iii) ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, . . . the name on the principal display panel or panels of the label shall be accompanied by the common name of the characterizing flavor . . . , preceded by 'artificial' or 'artificially flavored' . . . ."); *see also* C.F.R. §135.110(f)(5)(i) ("An artificial flavor simulating the characterizing flavor shall be deemed to predominate: (i) In the case of vanilla beans or vanilla extract used in combination with vanillin if the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent . . . .").

46.     Due to the artificial vanilla flavor predominating, the Breyers Natural Vanilla Ice Cream is required to be labeled as "artificial vanilla" or "artificially flavored vanilla." *See* 21 C.F.R. § 135.110(f)(2)(iii).

47.     Even if the amount of vanillin were not "greater than 1 ounce per unit of vanilla constituent," the Breyers Natural Vanilla Ice Cream would still be required to say "artificial vanilla" because it contains maltol, a "flavor from a non-vanilla bean source (which simulates, resembles, or reinforces the vanilla flavor)."[10]

48.     The alternate side panel describes the Breyers Natural Vanilla Ice Cream as follows:

---

[9] Hallagan, *supra* note 3.
[10] FDA, Newberry to Thompson, October 30, 1979.

1    • "Made With Non-GMO Sourced Ingredients"

2    • "At Breyers, We Start With Only High Quality Ingredients."

3    • "Our Colors and Flavors Come From Natural Sources."

4    • "Our Vanilla and Fruit Are Real and Sustainably Farmed."



49.    Unilever's statements about its ingredients are false, deceptive, and

unlawful because even though its "Flavors Come From Natural Sources" and are listed on the ingredient list as "Natural Flavor," the non-vanilla flavors are deemed "artificial" in the context of a Category 1 vanilla ice cream.

50.    Reasonable consumers are not aware of the distinction between natural and artificial flavors in ice cream products and are misled to expect all the flavor is from vanilla beans.

51.    Unilever intended for Plaintiff to be misled by Breyers Natural Vanilla Ice Cream by highlighting the vanilla component of the natural flavor, even though it knew that ice cream products which were not flavored only from vanilla cannot be labeled as "vanilla ice cream."

52.    Breyers Natural Vanilla Ice Cream is an example of a food that is labeled as "vanilla" that is clearly mislabeled and therefore in violation of FDA regulations. A common violation is to label a food product such as ice cream in a way that leads consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans, as defined in the federal standard of identity, when in fact it is not.[11]

**Misleading and Deceptive Representation:**

**Vanilla Beans without Vanilla Flavor**

53.    Unilever has created and disseminated numerous advertisements on television and radio which promote Breyers Natural Vanilla Ice Cream as containing only vanilla as flavoring, as discussed below.

54.    In one commercial entitled "The Vanilla Bean," kids are shown becoming excited as they examine the vanilla bean specks in the Breyers Natural Vanilla Ice Cream:

---

[11] Hallagan, *supra* note 3, at p. 53.

**"The Vanilla Bean" Commercial**





55.     The Vanilla Bean commercial promotes Breyers Natural Vanilla Ice Cream as containing real vanilla bean seeds, also known as "specks."

**Vanilla Bean Seeds**



56.     The commercial ends with a voiceover describing Breyers Natural Vanilla Ice Cream as "The good vanilla."



57.     Unilever's website states:

Do you see those specks? Those are real vanilla beans. That heavenly vanilla in Natural Vanilla is also 100% sustainably sourced, so you can enjoy it even more, knowing that you're supporting farmers and their

14

families in Madagascar through our partnership with the Rainforest Alliance. We believe that the quality of our ingredients makes the most delicious vanilla ice cream, and that's why even today we keep true to William Breyers® pledge of purity.[12]

our most popular ice cream flavors and the taste you love. Do you see those specks? Those are real vanilla beans. That heavenly vanilla in Natural Vanilla is also 100% sustainably sourced, so you can enjoy it even more, knowing that you're supporting farmers and their families in Madagascar through our partnership with the Rainforest Alliance. We believe that the quality of our ingredients makes the most delicious vanilla ice cream, and that's why even today we keep true to William Breyers® pledge of purity. Try Breyers® Natural Vanilla yourself and see if those vanilla specks and refreshing milk and cream can scoop up some smiles in your family. Want to give your dessert

58.     Vanilla bean specks are the:

tiny black seeds that line the inside of a vanilla bean. When flavor houses extract vanilla beans to make vanilla extract, the goal is to extract all possible flavor from the bean, including its seeds. After the vanilla extract has percolated for an optimal time, the vanilla bean pods and seeds sink to the bottom and are filtered from the extract. As a final step, the vanilla bean seeds are sifted from the spent vanilla bean pods.

The resulting bean pods and seeds are known as "exhausted," because all flavor has been extracted.[13]

59.     The FDA has long prohibited adding such ingredients to food, stating: Spent vanilla beans are considered an adulterant under Section 402(b) of the Federal Food, Drug, and Cosmetic Act. We have consistently considered spent spice ingredients adulterated because of extraction of essential ingredients.[14]

60.     According to the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), the addition of "ground vanilla beans which had been exhausted . . . do

---

[12] https://www.breyers.com/us/en/products/natural-vanilla.html
[13] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[14] Walter Moses, Division of Industry Advice, FDA, to Alan H. Kaplan, May 10, 1965.

not constitute a legitimate article of commerce for food use in that the valuable constituents, the flavoring principles, have been omitted or abstracted therefrom."[15] *See* 21 U.S.C. § 342(b)(1) ("A food shall be deemed to be adulterated – If any valuable constituent has been in whole or in part omitted or abstracted therefrom.").

61.    The FDA and TTB are clear that "[t]his type of adulteration cannot be corrected by any form of labeling."[16] *See* Moses Letter, *supra* note 14 ("We are unable to suggest any way that your client might use a combination of spent vanilla beans with other flavoring materials in ice cream.").

62.    The added exhausted vanilla beans only give the false impression that Breyers Natural Vanilla Ice Cream contains a greater amount of vanilla than it actually does.

## **Misleading and Deceptive Omission**
## **of the Key Differentiating Component: Non-Vanilla Flavors**

63.    Unilever falsely and misleadingly markets Breyers Natural Vanilla Ice Cream as having all of its flavor coming from the vanilla plant.

64.    Unilever, in its naming and marketing of Breyers Natural Vanilla Ice Cream, misleadingly, deceptively, and unlawfully omits any clear and conspicuous indication that the product contains non-vanilla flavor and that the amount of vanilla is not enough to provide the vanilla taste sought by consumers to the ice cream.

65.    The labeling and marketing of Breyers Natural Vanilla Ice Cream does not enable consumers to understand readily the distinction between natural vanilla and "natural flavors," which is the central difference between items labeled "Vanilla Ice Cream" and those with labels qualified by the terms "flavored" or "artificially flavored."

---

[15] Letter from Chester T. Hubble, Director of Administrative Review, Bureau of Enforcement, Bureau of Alcohol, Tobacco Tax Division, U.S. Treasury to Anthony Filandro, Virginia Dare Extract Company, Inc., August 23, 1960; TTB has authority over extract of vanilla due to alcohol content.
[16] Hubble letter, *supra* note 15.

66.     Unilever misleads consumers by advertising Breyers Natural Vanilla Ice Cream as a premium ice cream containing a sufficient amount of flavor from the vanilla plant and only the vanilla plant, capable of providing a vanilla taste to the ice cream.

67.     However, consumers are deceived because what they taste are ingredients and flavors designed to mimic and imitate vanilla, such as maltol and vanillin from non-vanilla sources.

### **Reliance and Economic Injury**

68.     When purchasing Breyers Natural Vanilla Ice Cream, Plaintiff sought a product with a materially greater amount of vanilla than Breyers Natural Vanilla Ice Cream actually contained.

69.     When purchasing Breyers Natural Vanilla Ice Cream, Plaintiff sought a product that was natural in that its flavor was provided exclusively by the natural characterizing flavor, vanilla.

70.     Plaintiff read and relied on Unilever's false and misleading product name (i.e., Breyers Natural Vanilla Ice Cream) and misleading claims in its labeling and advertising of the product.

71.     Plaintiff also saw and relied on images on the Breyers Natural Vanilla Ice Cream cartons and containers, which misleadingly emphasize "natural vanilla" and "vanilla beans," even though the amount of natural vanilla is not enough to impart a vanilla taste and the vanilla beans serve only a cosmetic and deceptive purpose. These images appeared in stores (on cartons and containers), on television and radio, and on the Internet.

72.     Plaintiff purchased Breyers Natural Vanilla Ice Cream, and paid more for it than Plaintiff would have paid for ice cream that was labeled as "Vanilla Flavored" believing the product had qualities Plaintiff sought (e.g., sufficient vanilla flavor to impart a vanilla taste, only flavor from vanilla) based on the misleading labeling and marketing; but, the product was unsatisfactory to him for

the reasons described herein.

73.    Breyers Natural Vanilla Ice Cream costs significantly more per ounce at stores like Walmart and Safeway than similar products labeled as "Vanilla Flavored Ice Cream."

74.    Plaintiff paid more for Breyers Natural Vanilla Ice Cream than Plaintiff would have had Plaintiff not been misled by the false and misleading labeling and advertising complained of herein. Plaintiff would not have purchased Breyers Natural Vanilla Ice Cream absent these misrepresentations.

75.    For these reasons, the Breyers Natural Vanilla Ice Cream products were worth less than what Plaintiff paid for them.

76.    Plaintiff purchased Breyers Natural Vanilla Ice Cream based on the false and misleading representations described herein.

77.    Plaintiff lost money as a result of Unilever's deception in that Plaintiff did not receive what he paid for.

78.    Plaintiff altered Plaintiff's position to Plaintiff's detriment and suffered damages in an amount equal to the amount Plaintiff paid for the Breyers Natural Vanilla Ice Cream.

79.    By engaging in its misleading and deceptive marketing, sales, and pricing scheme, Unilever reaped and continues to reap increased sales and profits.

80.    Unilever is familiar with marketing research and knows that many of its customers purchase Breyers Natural Vanilla Ice Cream because they seek indulgence – not just a product that tastes good, but that contains ingredients they are familiar with and have a connection to the food they are used in.

81.    Unilever knows that the vanilla content and flavor source of ice cream is material to consumers' decision to purchase Breyers Natural Vanilla Ice Cream and is also regulated by law.

82.    Unilever deliberately cultivates these misperceptions through its marketing, sales, and pricing scheme. Indeed, Unilever relies and capitalizes on

consumer misconceptions about Breyers Natural Vanilla Ice Cream.

## **CLASS ACTION ALLEGATIONS**

83.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class that Plaintiff seeks to represent (the "Class" or "the California Class") is composed of and defined as follows:

> All persons residing in California who have purchased Breyers Natural
> Vanilla Ice Cream for their own use (which includes feeding their
> families), and not for resale, since April 27, 2016. Excluded from the
> Class are: governmental entities; Defendant; any entity in which
> Defendant has a controlling interest; Defendant's officers, directors,
> affiliates, legal representatives, employees, co-conspirators,
> successors, subsidiaries, and assigns; and any judge, justice, or judicial
> officer presiding over this matter and the members of their immediate
> families and judicial staff.

84.     For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the named Plaintiff.

85.     This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3).

86.     **Numerosity**. The Class consists of many thousands of persons throughout the State of California. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

87.     **Commonality and Predominance**. The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of this action. They predominate over any questions affecting only individual class members. Common questions of law and fact include, but are not limited to, the following:

> a.     Whether Unilever contributed to, committed, or is responsible

for the conduct alleged herein;

    b.    Whether Unilever's conduct constitutes the violations of law alleged herein;

    c.    Whether Unilever acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

    d.    Whether Class Members are entitled to injunctive relief; and

    e.    Whether Class Members are entitled to restitution and damages.

88.    By seeing the name, labeling, display, and marketing of Breyers Natural Vanilla Ice Cream, and by purchasing Breyers Natural Vanilla Ice Cream, all Class Members were subject to the same wrongful conduct.

89.    Absent Unilever's material deceptions, misstatements, and omissions, Plaintiff and other Class Members would not have purchased Breyers Natural Vanilla Ice Cream.

90.    **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members because Plaintiff purchased Breyers Natural Vanilla Ice Cream products and was injured thereby. The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading, and unlawful conduct.

91.    **Adequacy**. Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with those of other Class Members. Each Class Member seeks damages reflecting a similar and discrete purchase or purchases that each Class Member made. Plaintiff has retained competent and experienced class action counsel, who intend to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

92.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-

prohibitive. Plaintiff anticipates no difficulty in the management of this action as a class action.

93.     This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading, and deceptive representations and omissions regarding Breyers Natural Vanilla Ice Cream.

94.     **Notice to the Class**. Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

## <u>FIRST CLAIM</u>
### <u>(ON BEHALF OF THE CALIFORNIA CLASS)</u>
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**Unlawful Conduct Prong**

95.     Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

96.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

97.     The acts, omissions, misrepresentations, practices, and non-disclosures of Unilever, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FFDCA"), and its implementing regulations, including, at least, the following sections:

   a.     21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any

21

combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

  b. 21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

  c. 21 U.S.C. § 343(g), which deems a food misbranded if it purports to be a food which is subject to a standard of identity but does not comply with such standard due to not containing the ingredients required by the standard;

  d. 21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

  e. 21 C.F.R. § 135.110(f)(2)(i), which prohibits a product from being labeled as "vanilla ice cream" where it contains flavor from sources other than its natural characterizing flavor, which is considered to be an "artificial flavor"; and

  f. 21 C.F.R. §135.110(f)(5)(i), which states that if the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent it is an artificial flavor.

98. Unilever's conduct is further "unlawful" because it violates California's False Advertising Law, Cal Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), as discussed in the claims below.

99. Unilever's conduct also violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875 *et seq.* ("Sherman Law"), including, at least, the following sections:

  a. Section 110100 (adopting all FDA regulations as state regulations);

  b. Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken

into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

       c.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.");

       d.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

       e.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

       f.    Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

       g.    Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

100.   Each of the challenged statements made and actions taken by Unilever violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

101.   Unilever leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

102.   Unilever's deceptive advertising caused Plaintiff and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase Breyers Natural Vanilla Ice Cream over other products that are less expensive and contain virtually the same or immaterially different amounts of vanilla. Had Plaintiff and the members of the Class been aware of Unilever's false and misleading advertising tactics, they would not have purchased Breyers Natural Vanilla Ice Cream at all or would have paid less than what they did for it.

103.   In accordance with California Business and Professions Code section 17203, Plaintiff seeks an order enjoining Unilever from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

104.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Breyers Natural Vanilla Ice Cream products that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

105.   THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CLAIM

### (ON BEHALF OF THE CALIFORNIA CLASS)

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

**Unfair and Fraudulent Conduct Prongs**

106.   Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

107.   As set forth above, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

108.   The false and misleading labeling of Breyers Natural Vanilla Ice Cream, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Unilever's conduct outweighs any conceivable benefit of such conduct.

109.   The acts, omissions, misrepresentations, practices, and non-disclosures of Unilever as alleged herein constitute "fraudulent" business acts and practices because Unilever's conduct is false and misleading to Plaintiff and members of the Class.

110.   Unilever's labeling and marketing of Breyers Natural Vanilla Ice Cream is likely to deceive Class Members about the flavoring source and amount of vanilla of Breyers Natural Vanilla Ice Cream.

111.  Unilever either knew or reasonably should have known that the claims and statements on the labels of Breyers Natural Vanilla Ice Cream were likely to deceive consumers.

112.  In accordance with California Business and Professions Code section 17203, Plaintiff seeks an order enjoining Unilever from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

113.  Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Breyers Natural Vanilla Ice Cream products that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

114.  THEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500 *et seq.***
**False and Misleading Advertising**

115.  Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

116.  California's FAL prohibits "mak[ing] any false or misleading advertising claim."

117.  As alleged herein, Unilever, in its labeling of Breyers Natural Vanilla Ice Cream, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla of Breyers Natural Vanilla Ice Cream.

118.  In reliance on these false and misleading advertising claims, Plaintiff and members of the Class purchased and used Breyers Natural Vanilla Ice Cream without the knowledge that Breyers Natural Vanilla Ice Cream did not contain only flavor from vanilla and its vanilla taste was provided mainly by non-vanilla,

25

artificial sources.

119.   Unilever knew or should have known that its labeling and marketing was likely to deceive consumers.

120.   As a result, Plaintiff and the Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Unilever was unjustly enriched.

121.   THEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM

## (ON BEHALF OF THE CALIFORNIA CLASS)

**Violation of California's Consumers Legal Remedies Act,**

**Cal. Civ. Code § 1750 *et seq.***

122.   Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

123.   The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

124.   Unilever's policies, acts, and practices were designed to, and did, result in the purchase and use of Breyers Natural Vanilla Ice Cream primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.     Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

b.     Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits, or ingredients that they do not have;

c.     Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

d.     Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

e.      Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

125.   As a result, in accordance with California Civil Code section 1780(a)(2), Plaintiff and members of the Class have suffered irreparable harm and seek equitable relief in the form of an order:

a.      Enjoining Unilever from continuing to engage in the deceptive practices described above;

b.      Requiring Unilever to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

c.      Requiring Unilever to disgorge all ill-gotten gains flowing from the conduct described above;

d.      Requiring Unilever to provide public notice of the true nature of Breyers Natural Vanilla Ice Cream; and

e.      Enjoining Unilever from such deceptive business practices in the future.

126.   Pursuant to California Civil Code sections 1752, 1780, and 1781, Plaintiff, on behalf of himself and other Class Members, seeks actual and punitive damages in an amount to be determined at trial, distribution of notice to the Class, an order of this Court enjoining Unilever from the unlawful practices described herein and requiring Unilever to provide refunds, as well as an award of costs of litigation and attorneys' fees.

127.   Pursuant to California Civil Code section 1782, a CLRA pre-suit demand was sent to Unilever in writing of the particular violations of section 1770 of the CLRA via certified letter sent February 13, 2020, return receipts requested, to Amanda Sourry, Unilever's Chief Executive Officer, at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and to Unilever's registered agent in the State of California.

128.   The CLRA demand letter to Unilever included the legal basis for the claim and informed Unilever that unless it complied with the demand, a Complaint would be filed which would include claims for actual damages, punitive damages, and all other damages permitted under the CLRA. Plaintiff's undersigned counsel received electronic return receipts via U.S. Mail indicating that Plaintiff's CLRA demand letters were received by Unilever on February 19, 2020. More than 30 days have passed, and Unilever has failed to meaningfully respond to Plaintiff Nuñez's CLRA demand letter.

129.   THEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.     An order certifying that the action may be maintained as a class action and requiring Unilever to bear the cost of class notice;

B.     An order enjoining Unilever from pursuing the policies, acts, and practices complained of herein;

C.     An order compelling Unilever to destroy all misleading and deceptive advertising materials and packaging;

D.     An order requiring Unilever to pay restitution to Plaintiff and all members of the Class;

E.     An order requiring Unilever to pay actual damages to Plaintiff and all members of the Class;

F.     Punitive damages;

G.     Pre-judgment interest from the date of filing suit;

H.     Costs, expenses, and reasonable attorneys' fees; and

I.     Such other and further relief as the Court may deem necessary or appropriate.

1

## JURY TRIAL DEMAND

2        Plaintiff demands a jury trial on all causes of action so triable.

3   Date: April 27, 2020                Respectfully submitted,

4                                      **REESE LLP**

5                         By:   */s/ Michael R. Reese*

6                                    Michael R. Reese (SBN 206773)
*mreese@reesellp.com*

7                                    100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

8                                    Facsimile: (212) 253-4272

9                                    **REESE LLP**

10                                    George V. Granade (SBN 316050)
*ggranade@reesellp.com*

11                                    8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

12                                    Facsimile: (212) 253-4272

13                                    **SHEEHAN & ASSOCIATES, P.C.**

14                                    Spencer Sheehan (*Pro Hac Vice* to be
Submitted)

15                                    505 Northern Boulevard, Suite 311
Great Neck, New York 11021-5101
Telephone: (516) 303-0552

16                                    Email: *spencer@spencersheehan.com*

17                                    *Counsel for Plaintiff Steve Nuñez
and the Proposed Class*

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT OF MICHAEL R. REESE**

**PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780**

Michael R. Reese declares:

1.      I am an attorney duly admitted to practice before this Court. I am a partner in the law firm of Reese LLP, attorneys of record for Plaintiff Steve Nuñez.

2.      I am one of the attorneys principally responsible for the handling of this matter. I am personally familiar with the facts set forth in this declaration, and if called as a witness, I could and would competently testify to the matters stated herein.

3.      This action has been commenced in a county described in California Civil Code section 1780 as a proper place for the trial of the action. The transactions or a substantial portion thereof occurred in Los Angeles County, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 27, 2020, at New York, New York.

*/s/ Michael R. Reese*
Michael R. Reese